**TEXAS EASTERN TRANSMISSION CORPORATION, Plaintiff,**

v.

**C. Carlos GARZA, Jr., Defendant.**

Civ. A. No. C–94–24.

United States District Court, S.D. Texas, Corpus Christi Division.

April 25, 1995.

---

Wilson Calhoun, Meredith Donnell & Abernethy, Corpus Christi, TX, for plaintiff.

Charles Dodson Thompson, Corpus Christi, TX, for defendant.

*ORDER GRANTING PLAINTIFF TEXAS EASTERN TRANSMISSION CORPO-RATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CLAIMS FOR RELIEF AND MO-TION SUMMARY JUDGMENT AS TO THE AMENDED COUNTER-CLAIM OF GARZA*

JACK, District Judge.

On this day came on to be considered Plaintiff Texas Eastern Transmission Corporation's Motion for Partial Summary Judgment on its Claims for Relief against Defendant C. Carlos Garza and Texas Eastern Transmission Corporation's Motion for Summary Judgment as to the amended counterclaim of Defendant C. Carlos Garza, Jr.

*I. Jurisdiction.*

Before this Court is Plaintiff's Motion for Partial Summary Judgment on its claims for relief against Defendant C. Carlos Garza and Motion for Summary Judgment as to the Amended Counterclaim of Defendant C. Carlos Garza. This Court has jurisdiction by reason of diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

*II. Facts and Proceedings.*

On January 27, 1994, Plaintiff Texas Eastern Transmission Corporation (hereinafter "Texas Eastern") filed suit against Defendant C. Carlos Garza, Jr. (hereinafter "Garza") in relation to a pipeline used for the transportation of natural gas by Texas Eastern. A portion of said pipeline crosses property owned by Garza in Kenedy County, Texas and Hidalgo County, Texas and was installed prior to 1987.

Texas Eastern, in an effort to prevent corrosion, has installed a number of devices appurtenant to the pipeline. One such device is a deepwell cathodic protection unit (hereinafter "DCPU"). In 1988, Texas Eastern installed a DCPU on Garza's Kenedy County property. In 1991, Texas Eastern installed

an additional DCPU on Garza's Hidalgo County property. In 1995, Texas Eastern attempted to perform maintenance on the Hidalgo County DCPU and Garza refused entry on the property. In 1993, Texas Eastern attempted to replace the malfunctioning DCPU, which was originally installed in 1988 on Garza's Kenedy County property, however, Garza has refused to allow entrance to the property.

Texas Eastern seeks a declaratory judgment in that it claims to have the right to enter the Kenedy and Hidalgo County properties for the purpose of installing a DCPU appurtenant to its transmission pipeline traversing each such property and further declares that it has the right to install, repair or replace this or other DCPUs in the future as appurtenances to the pipeline. Further, Texas Eastern seeks a declaration that the refusal by Garza of entry to plaintiff amounts to breach of contract.

Garza has filed a counterclaim in which he asserts that Texas Eastern is outside the scope of its right of way agreements by installing one of the types of corrosion devices it has used and this constitutes breach of contract. Furthermore, but not in the alternative, Garza claims that Texas Eastern does not have a valid right of way or easement giving it the right to install or operate a pipeline or a DCPU on his property. Garza has withdrawn claims of 42 U.S.C. § 1981 and 42 U.S.C. § 1982. Garza asserts a trespass cause of action on the Kenedy County property.

On March 24, 1995, Texas Eastern moved for Partial Summary Judgment on its claims for relief. The motion encompasses all of Texas Eastern's claims set forth in its amended complaint except for its claim to attorney's fees. Texas Eastern argues they have the contractual and real property right to enter the Kenedy County property and Hidalgo County property of Garza to install corrosion protection equipment on the portion of its pipeline.

On April 19, 1995, Defendant Garza filed a responsive brief devoid of evidence in opposition to Plaintiff's motion for partial summary judgment. Garza asserts that Texas Eastern does not have a valid right of way agreement

as to the Kenedy County property. Further, Garza claims that Texas Eastern has gone beyond the scope of their contractual and real property rights as to the installation of DCPUs on both properties.

Also on March 24, 1995, Texas Eastern filed a Motion for Summary Judgment as to the Amended Counterclaim of Garza with Alternative Motion for Judgment on the Pleadings. Oral arguments regarding both summary judgment motions filed by Texas Eastern were heard on April 19, 1995. Although, the defendant filed a response and brief in opposition to each of Texas Eastern's motions, Garza offered no evidence controverting the summary judgment evidence submitted by Texas Eastern. The Court, having considered both motions, and arguments of counsel, is of the opinion that Texas Eastern's motion for partial summary judgment on its claims for relief and Texas Eastern's motion for summary judgment as to the amended counterclaim of Garza should be GRANTED.

## III. Discussion.

### A. The Summary Judgment Standard.

In a motion for summary judgment, the moving party has the burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). The Court must view all inferences from the evidence in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

However, after the movant for a motion for summary judgment has met its burden, it is then incumbent upon the non-movant to show that disputed issues of fact remain. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990). In response, the non-movant must go beyond the pleadings and, by "affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S.

317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(e)).

■ Fed.R.Civ.P. 56(c) mandates summary judgment in any case where a party fails to establish the existence of an essential element of the case and on which he bears the burden of proof. *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986). A complete failure of proof on the essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Id.* Rule 56(c) requires the district court to enter summary judgment if the evidence favoring the non-moving party is not sufficient for the jury to enter a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When the moving party has carried his burden under 56(c), his opponent must present more than a metaphysical doubt about the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. Texas Eastern's Motion for Partial Summary Judgment.

#### 1. Chain of Title for Kenedy County.

■ Texas Eastern filed for partial summary judgment alleging their contractual and real property rights to the Kenedy County Property, pursuant to right of way agreements, are superior to the property rights obtained by Garza. However, in order to determine such rights, it is necessary to examine the chain of title as to the Kenedy County property. All exhibits to Texas Eastern's motion for summary judgment are uncontroverted. Also uncontroverted is the fact that all recorded documents were recorded in the proper county.

The Kenedy County property is a part of the San Salvador del Tule Grant, and is located in Kenedy County, Texas. Affidavit of Thomas R. McBath at p. 2. The San Salvador del Tule Grant was partitioned by the court in Cause No. 422 in the District Court of Hidalgo County, Texas, among the heirs and assignees of the original grantee, and Tract 25, containing 1,220.5 acres, including Subject land, was set aside to persons including Celia Garza, Reynaldo Garza and Ramona Garza. Affidavit of McBath at p. 2. In 1931, the owners of Tract 25 entered into an oral partition. Affidavit of McBath at p. 2. All of Lot A was set aside to Celia Garza, Reynaldo Garza and Ramona Garza, in equal, undivided shares in this oral partition which was confirmed in a recorded instrument in 1953. Affidavit of McBath, Exhibit A.

Lot A is the only Kenedy County property that is at issue in this cause. In 1941 Celia Garza died intestate survived by her husband Jesus Cantu and her only child, Ramon Cantu. Affidavit of McBath at p. 3. As such, Jesus Cantu received a one-third life estate interest in Celia Garza's one-third share of Tract A and Ramon Cantu received a two-thirds fee simple interest in Celia Garza's one-third share of Tract A and became a remainderman to Jesus Cantu's one-third life estate. V.A.T.S. Probate Code § 38(b)(1).

In 1956, C.C. Garza, Sr., the father and grantor of defendant Garza, executed a right of way agreement in favor of Texas Eastern to construct, maintain, operate, alter, repair or replace a pipeline for the transportation of gas or other products across the entire Lot A, encompassing the Kenedy County property. Affidavit of McBath, Exhibit G. The right of way agreement is limited to a 100 foot wide easement of which the 100 feet are to be chosen at the discretion of Texas Eastern. Affidavit of McBath, Exhibit G. This right of way agreement was recorded in the Real Property Records of Kenedy County, Texas on September 17, 1956. Affidavit of McBath, Exhibit H. It is undisputed that C.C. Garza, Sr. did not own Lot "A" at the time of this transfer.

In 1961, C.C. Garza, Sr. received title to all of Tract A from Ramona Garza, Reynaldo Garza, and Ramon Cantu by way of quitclaim deed. Affidavit of McBath, Exhibit I. At the instant Lot A was transferred to C.C. Garza by quitclaim deed, the doctrine of after acquired title served to vest the right of way in Texas Eastern. *Houston First American Savings v. Musick*, 650 S.W.2d 764, 770 (Tex. 1983) (citing *Caswell v. Llano Oil Co.*, 120 Tex. 139, 36 S.W.2d 208, 211–212 (1931)).

■ It is uncontroverted that in 1963, C.C. Garza, Sr. conveyed Tract A to his son,

defendant C. Carlos Garza, Jr., by gift deed.[1] Affidavit of McBath, Exhibit L. Garza now holds ownership, subject to the 1956 right of way executed by C.C. Garza, Sr. in favor of Texas Eastern, of the undivided fee interest in Lot A. Defendant Garza argues the existence of a lost deed executed in the 1940s which conveyed to Ramon Cantu the southernmost twenty-five foot strip of Tract A somehow affects title as between Texas Eastern and Garza. However, in 1961, Ramon Cantu conveyed by quitclaim deed, all of his interest in Lot A to C.C. Garza, Sr. As such, all of Ramon Cantu's interest passed to C.C. Garza, Sr., and then ultimately to defendant Garza. Garza further argues that in 1956, Ramon Cantu deeded the same above described twenty-five feet of Lot A as a right of way to Texas Eastern, which document was unrecorded until 1991. This event could not effect title between Texas Eastern and Garza for the following reasons:

1. Garza did not take title as a bona fide purchaser from his grantor/father as his conveyance was by gift deed. A bona fide purchaser is one who makes good faith purchase of real property for valuable consideration without actual or constructive notice of an outstanding equity or an adverse interest or title. *Socony Mobil Oil Corp. v. Belveal,* 430 S.W.2d 529 (Civ.App.—El Paso 1968, ref. n.r.e.). A gift deed does not contain valuable consideration. *Gleeney v. Crain [Glenney v. Crane],* 352 S.W.2d 773, 775 (Tex.Civ. App.—Houston, 1961, writ ref'd n.r.e.).

2. Garza is further precluded from taking as a bona fide purchaser in that he has a quitclaim in his chain of title. As such, he was on notice of all recorded and non-recorded transactions. Tex. Prop.Code Ann. § 13.002 (Vernon 1984); *See Smith v. Morris & Co.,* 694 S.W.2d 37 (Tex.App.1985, writ ref'd n.r.e).

3. Since Garza had notice by the recordation of his father's transfer of the right

of way to all of Lot A in his chain of title, he can hardly claim lack of notice of the existence of a right of way over Lot A belonging to Texas Eastern. Tex.Prop.Code Ann. § 13.002 (Vernon 1984); *Jones v. Fuller,* 856 S.W.2d 597 (Tex.App.—Waco 1993 reh'g denied, error denied).

Though various transactions and conveyances refer to the subject land as "Lot A", "Lot B", "Lot C", or "Lot D", it is uncontroverted and further stipulated to by the Defendant in open Court that all pertinent transactions and conveyances actually refer to Tract 25, Lot A.

The title of Texas Eastern as to the right of way over Lot A is therefore superior as to Garza. It is undisputed that, if this is true, Texas Eastern's pipeline and DCPUs are properly situated on their easement. There is no dispute by Garza as to the validity of the title owned by Texas Eastern as to the Hidalgo County property.

### 2. Texas Eastern's Breach of Contract Claim against Garza.

The right of way agreements executed in favor of Texas Eastern as to both the Hidalgo and Kenedy County properties owned by defendant Garza include a grant to Texas Eastern "to construct, lay, maintain, operate, alter, repair, remove and replace one pipeline and appurtenances thereto (including Corrosion Control equipment) ..." Affidavit of McBath, Exhibits G, H. Texas Eastern alleges that Garza's refusal to allow them access to install, replace and maintain their DCPUs on the Hidalgo and Kenedy County right of ways constitutes a breach of contract by Garza. It is uncontroverted that defendant Garza has denied access to both properties in order that Texas Eastern might install, replace and/or maintain their DCPUs. Garza alleges that the installation of DCPU's is beyond the scope of the right of way agreements. Garza further claims that if the agreements give Texas Eastern a place to

---

1. The deed from C.C. Garza, Sr. to Garza states that it is in "consideration of the sum of $10.00 and the love and affection which we have and bear towards Carlos Garza, our son." Affidavit of McBath, Exhibit L. However, $10.00 cash or love and affection, or both, are not valuable consideration for a deed. *Glenney v. Crane,* 352 S.W.2d 773, 775 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.).

put their pipeline and related equipment, that it does not give Texas Eastern the right to use of any other property of defendant Garza, including his deep ground water resources.

■■■■■ Every easement carries with it the right to do whatever is reasonably necessary for the full enjoyment of the easement itself. *Knox v. Pioneer Natural Gas Company,* 321 S.W.2d 596, 601 (Tex.Civ.App.—El Paso 1959). The extent to which such incidental rights may be exercised depends upon the object and purpose of the grant and whether such rights are limited by the terms of the grant creating easement. *Id.* Furthermore, a grantee of a right of way is entitled "to avail himself of modern inventions if by doing so he can more fully exercise and enjoy or carry out the object for which the way was granted." *Id.*

The DCPU is one of three types of cathodic protection units used in corrosion control. Affidavit of John Schmidt at p. 2. It is noted to be the most effective at the locations in question and a much less intrusive use of the surface estate. Affidavit of John T. Schmidt at pp. 2–3. Although Garza alleges that by the mere existence of the DCPUs, Texas Eastern is "using" his subsurface water, the uncontroverted evidence shows that cathodic protection by way of DCPU does not in any way deplete or change the moisture in the soil. Affidavit of John T. Schmidt at 3. Garza's deep ground water resources are therefore not altered in any way. The Court finds, therefore, that the installation, replacement and/or maintenance of a DCPU on the Kenedy and Hidalgo County properties is within the contractual scope of the right of way agreement. Further, the Court finds that the refusal by Garza to allow plaintiff access to these properties constitutes a breach of these contracts.

### C. Summary Judgment as to the Amended Counterclaim of Garza

#### 1. Garza's Breach of Contract Claims.

Garza alleges two separate breach of contract claims against Texas Eastern. Garza first claims that Texas Eastern's 1988 installation of a DCPU on the Kenedy County property and Texas Eastern's 1991 DCPU installation on the Hidalgo County property are beyond the scope of the right of way agreements and therefore constitutes breach of contract. Secondly, Garza claims that certain installations by Texas Eastern on Garza's Hidalgo County property are above ground in breach of Texas Eastern's agreement to bury its pipeline below the ground.

*The Scope of the Right of Way Agreements.*

The Court GRANTS Summary Judgment in favor of Texas Eastern as to the first count of Garza's breach of contract claim for the reasons previously discussed.

*Texas Eastern's Above Ground Installations.*

■■■■ There are two above ground service sites on Garza's Hidalgo County property. Affidavit of Gary Beltz at p. 8. Texas Eastern has a mainline valve above the surface on said property and Transco owns and operates a tap valve connection between Texas Eastern's pipeline and Transco's pipeline. Affidavit of Gary Beltz at p. 8. It is uncontroverted that Texas Eastern's mainline valve and Transco's equipment were installed prior to 1987. Affidavit of Gary Beltz at p. 8.

The statute of limitations for breach of contract is four years after the day the cause of action accrues. Tex.Civ.Prac.Rem.Code § 16.004 (Vernon 1986). Because the above ground installation occurred prior to 1987, the cause of action accrued at least in 1987. Garza filed his counterclaim alleging breach of contract on April 25, 1994. As such, the statute of limitations bars this cause of action.

#### 2. Garza's Trespass Claims.

Garza alleges Texas Eastern has trespassed onto his property in that Texas Eastern does not have a valid right of way easement giving it the right to install or operate a pipeline or a DCPU on the Kenedy County property and further that said installations are beyond the scope of the right of way agreement held by Texas Eastern. For the reasons hereinabove discussed, the Court has previously determined that Texas Eastern has a valid right of way on the Kenedy

1062

County property and that the placement and maintenance of DCPUs is not outside the scope of said right of way agreement. Therefore, Garza's trespass claim must fail.

### IV. Conclusion.

For the above stated reasons, it is ORDERED that Plaintiff Texas Eastern Transmission Corporation's Motion for Partial Summary Judgment on its Claims for Relief is hereby GRANTED.

It is further ORDERED that Plaintiff Texas Eastern Transmission Corporation's Motion for Summary Judgment as to the Amended Counterclaim of Garza is hereby GRANTED.

All that remains for trial are the attorney fees of Texas Eastern based on their breach of contract claim.